UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 17-cv-23888-SCOLA/Torres

DAWN SCACCETTI,

    Plaintiff,

vs.

NCL (BAHAMAS) LTD.

    Defendant.

_____/

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE [DE 74]**

    Defendant, NCL (BAHAMAS) LTD., by and through its undersigned counsel, hereby replies in support of its Motion to Strike. [DE 74]. In support, Defendant states:

**1. Plaintiff Fails to Show That Lichtblau's Testimony is Admissible at Trial**

    Defendant's Motion, in this order, raises the following problems with Lichtblau's proposed testimony: (1) Lichtblau misrepresents himself as a treating physician, but he is solely an evaluator for the purposes of the instant litigation, (2) Lichtblau's opinions are not his own and he cannot be used as a conduit for Dr. Lamm's expert causation opinions during trial, (3) Dr. Lamm cannot offer these opinions at trial either as he was not properly disclosed under the rules, (4) regardless of the author, the opinions regarding Plaintiff's need for future care are speculative, unreliable, unhelpful, confusing, and lack probative value, (5) Lichtblau's bases for these opinions is unreliable as he has not reviewed pre-incident records and relied solely on an incomplete medical history relayed by Plaintiff without checking it for accuracy or completeness, (6) the methods Lichtblau uses are unreliable because the professional medical community would not simply defer to others in forming opinions, nor would they take Plaintiff at her word without reviewing her medical records, (7) Lichtblau cannot buttress the admissibility of his testimony with novel scientific literature disclosed after Defendant's *Daubert* motion has been filed, and (8) Lichtblau's unrelated and irrelevant opinions and findings concerning Plaintiff's arms, legs, hands, etc. are confusing, misleading, and have no probative value.

Plaintiff's Response shuffles these points, obscuring them and discussing topics Defendant does not raise. This effort at misdirection fails. Lichtblau should be precluded from testifying at trial.

### A. Lamm's Expert Opinions Were Not Disclosed As Required by Rule 26

Plaintiff's Response opens with a bulleted list of expert medical causation opinions from Dr. Lamm. [DE 98 p3]. Notably, Plaintiff does not Respond to Defendant's argument and law showing that "Lamm has not been disclosed as one of Plaintiff's experts, so […] his opinions that the subject incident *caused* some speculative amount of future damages [are] inadmissible." [DE 74 p7] (emphasis added). Plaintiff points to no expert disclosures for Lamm, and she appears to believe that ambushing Defendant with this expert witness testimony during Lamm's deposition meets the requirements of the Rules and does not prejudice Defendant. Of course, treating physicians testifying to opinions that go beyond observations made in the course of treatment and/or offering medical causation opinions must be disclosed as experts under Rule 26. *Id*. at 6-7; *see also* Fed. R. Civ. P. 26(a)(2)(B), (a)(2)(C). Defendant provides extensive authority for this point that Plaintiff's Response ignores. *Id*. at 7; [DE 98]. Lamm's causation opinions about Plaintiff's future medical care are not admissible at trial. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to […] identify a witness as required by Rule 26(a) […], the party is not allowed to use that […] witness to supply evidence […] at a trial, unless the failure […] is harmless.").

### B. Defendant's Motion Does Not Challenge Lichtblau's Qualifications

Plaintiff spends two pages of her Response discussing Lichtblau's qualifications and citing guidance for the proposition that Lichtblau's opinions ought to be admitted because similarly-credentialed experts have had similar opinions admitted elsewhere <u>when their qualifications were challenged</u>. [DE 98 pp6-8]. But Defendant's Motion does not challenge Lichtblau's qualifications. *See* [DE 74 pp5-13].

Defendant's Motion describes how Lichtblau farmed out the evaluation of Plaintiff to Lamm, an orthopedic specialist, and then used Lamm's opinions as his own in his expert report. [DE 74 pp5-8]. This fact is not controversial – Lichtblau repeatedly admitted the opinions about Plaintiff's future medical care are Lamm's opinions. [DE 74-5 63:13-18, 67:15-68:13, 71:23-72:2]. Likely due to unfamiliarity with the details of Lamm's work, Lichtblau tries and fails to describe the factual bases for, or the reliable methods used to arrive at, these opinions. [DE 74 pp8-14]. Instead, he offers nursery rhymes, invokes common sense, stomps his foot and insists

that all this stuff is as simple as "one plus one," among other inadmissible and unhelpful antics. *Id*. at 11-13.  This effort fails to meet Plaintiff's burden of showing his testimony is admissible.

In addition, Lichtblau's testimony shows that the alleged future medical damages premised on Plaintiff developing post-operative arthritis at some point in the future are wholly speculative. *Id*. at 7-8.  In describing Plaintiff's need for future medical care, Lichtblau offers no concrete details and, instead, offers confusing and misleading testimony.  He testified Plaintiff will need "one or a combination of four [or] five different surgeries," which "is going to be a polite combination of one or two […] or three of those," and "at least two" but Lichtblau "doesn't know [and] can't tell you which ones."  [DE 74 p7-8].  This confusing result is unsurprising as Lamm's testimony on the very same opinions is also speculative and unhelpful.

> Q. [….]  So despite the fact that it's not actually in your treating records, your testimony […] is that she does have post-traumatic arthritis?
>
> A. […. R]ight now, I would say no, I wouldn't say she has post traumatic arthritis.  But […] I'm concerned in her future because of the known injury and her [reports of] current ankle pain, that that's what could be developing currently.
>
> Q. [….]  So you -- you believe she might -- might be developing post-traumatic arthritis, but you have not actually diagnosed her with that at the moment?
>
> A. Correct. [….]
>
> Q. Okay.  And is it possible that Mrs. Scaccetti might not develop post traumatic arthritis?
>
> A.  Post-traumatic arthritis is something that can occur, you know, very quickly, or **it could occur at a later stage after the injury, meaning years afterwards**.  So it could happen at any of those times.
>
> Q. But it could also not happen at all, correct?  [….]
>
> A. Any intra articular fracture, which this particular ankle fracture was a[n] intra articular fracture, typically, and **there's of course cases where it could not happen**.

Lamm Depo, Ex A 52:6-54:10 (emphasis added).  Lamm was also unsure about future surgery.

> Q. [….]  At this point, you have not recommended that she have reconstructive surgery; is that correct?
>
> A. That's correct.
>
> Q. Okay.  Are you aware of any other medical professional that has recommended that she undergo reconstructive surgery at this point?
>
> A. Not at this point, no.
>
> Q. **So your opinion again is just that [Plaintiff] <u>might</u> need reconstructive surgery in the future?**

> A. **Correct, yeah. <u>We don't know</u>.**
>
> Q. So you can't say to a reasonable degree of medical probability that she will, in fact, need that surgery?
>
> A. What I would say is it's more likely than not that **she's going to need <u>some sort of ankle surgery</u> in the future**, given her current symptoms.

Ex A, 54:22-55:17 (emphasis added). Lamm, Plaintiff's treating orthopedist, cannot describe her need for future medical care with any clarity. His testimony is nearly identical to that of Lichtblau, albeit less confusing. *See* [DE 74 pp6-8]. Defendant does not challenge Lichtblau's qualifications because he is not an orthopedist, as Plaintiff's Response suggests. Defendant challenges (1) the helpfulness of these speculative opinions, (2) Lichtblau's ability to offer Lamm's opinions as his own, and (3) the reliability of opinions that result from inadequate factual bases and unsanctioned methods. Asking a doctor for opinions is not what medical expert witnesses do.

### C. Lichtblau's Methods Are Unreliable

Plaintiff claims that "Lichtblau explains his care-planning methodology [during] his deposition," but a review his deposition shows he repeatedly failed to describe his method. *See* [DE 74-5 54:9-12, 55:5-11, 59:8-17, 60:24-62:22]. This testimony is merely a collection of *Daubert*-related buzzwords designed to create the air of admissibility.

> …in my practice I use peer-reviewed published literature to talk about causation. That is a peer-reviewed published literature and that translates into everything. In other words, if you want to talk -- if you fall down and you break a wrist, you fall down and you break your knee, you fall down and you break your hip, you fall down and you break your ankle, you get shot in the head, if you look at the way medicine is practiced, history, physical exam, differential diagnosis, and apply the three prongs of causation that are published in that article[1], it works out.
>
> It is one plus one plus one equals three, and that's what I use. I use peer-reviewed published methodology on how to come up with my causation opinion.

[DE 74-5 158:6-21]. Elsewhere, his method is described as "the three prongs […] which we use […] to talk about causation [are] biological plausibility, temporality[,] and ruling out other extraneous causes, and that goes to every causation [sic]." *Id*. at 155:22-156:1 (edited/redacted for comprehensibility). If this is Lichtblau's method, he failed to use it here. He did not review pre-incident records, verify her self-reported history, or ask her about *any* relevant conditions.

> Q. Did you ask specifically has she ever had a problem with her lower back?

---

[1] Lichtblau's "article" was not among the 80+ articles cited in his 250+ page expert report.

>   A. No.
>
>   Q. Did you ask whether she had problems with her lower extremities? Did you ask specifically whether she had ever had a problem with her gait before?
>
>   [.... A.] No, because it's all irrelevant.

[DE 74-5 173:7-15]. However, his other testimony makes it clear that "it's" not all irrelevant.

>   [....] There's all kinds of reasons to have altered body mechanics [...].
>
>   Q. [...W]hat are the other reasons, [...] unrelated to her broken ankle?
>
>   A. Well, **she could have a problem with her knee**.

*Id*. at 58:12-16 (emphasis added). Notably, Plaintiff had pre-incident right-knee issues that she failed to tell Lichtblau about (*compare* [DE 28-1 60:15-19]; [DE 74-5 29:8-11]) and post-incident left knee issues that Lichtblau knew of ("**We know she has a problem with her knee**." [DE 74-5 58:17]) but ignored. When asked if Plaintiff's altered gait predated the subject accident, Lichtblau snapped, "I don't know and I don't care." [DE 74-5 168:2-4]. As is clear, Lichtblau failed to follow his own method. As such, past "judicial acceptance" of his methods that Plaintiff's Response notes suggest nothing about the admissibility of his testimony here.

Moreover, inspection of what Plaintiff's Response claims is Lichtblau explaining his methodology shows that it is merely Plaintiff's counsel reading a methodology out of an article and asking if he did the steps described, to which Lichtblau repeatedly says, "I did." *See*, *generally*, [DE 74-5 pp126-130]. Even after being spoon-fed in this manner, Lichtblau continued to respond with dismissive, condescending remarks when queried about his method. *See* [DE 74-5 158:18-21 ("It is one plus one plus one equals three [...]."), 166:19-22 ("[I]f it looks like a duck, quacks like a duck, has feathers like a duck, has webbed feet like a duck, ends up in a Chinese restaurant as Moo Goo Gai Duck, I think it's a duck.")]. This is unhelpful, confusing, and lays bare the wildly unreliable nature of Lichtblau's proposed opinion testimony.

### D. Lichtblau Did Not Treat Plaintiff

Plaintiff's Response claims that Lichtblau prescribed Plaintiff medication, but he "gave her Voltaren Gel" [DE 74-5 20:10] and no records reflecting prescriptions were produced in response to subpoenas seeking same. Plaintiff claims that Lichtblau ordered physical therapy for Plaintiff, but he testified, "I didn't put her in therapy or anything. She really wasn't a candidate for therapy." *Id*. at 17:5-6. Of the items Plaintiff suggests make Lichtblau a treating physician, all that remains is his referral of Plaintiff to Lamm and his billing of Plaintiff's insurance carrier

for his work. Neither of these turns Lichtblau from an evaluator into a treater. This Court should not be misled. Plaintiff's counsel and Lichtblau have a long history. *See* [DE 74 p6].

### E. Lichtblau's Opinions Are Not His Own

Lichtblau's testimony excerpted in Defendant's Motion, as well as Lamm's testimony above, *supra* pp3-4, show – without question – that Lichtblau's opinions are not his own. Plaintiff's Response claims that Lichtblau testified, "on p.65" that "he would not" "defer to Dr. Lamm" regarding Plaintiff's future surgery needs. [DE 98 p10]. However, the opposite is true.

> Q. [… Y]ou would defer to Dr. Lamm or another doctor who actually examines her at the time she's having issues in order to determine which surgery she is going to have, if at all?
>
> A. I would disagree. Once conservative care fails for a patient, I do make a surgical recommendation. I would say you need arthroscopic surgery, you need a stabilization procedure, or you need an ankle fusion. **I will then send her to the appropriate surgeon or surgeons for one or two opinions, and they would make the final decision** […].

[DE 74-5 65:5-16]. Put flatly, Lichtblau defers to others for medical opinions and for decisions about surgery. This is not how one evaluates a patient and arrives at admissible medical expert opinions. Lichtblau ought not be allowed offer Lamm's expert opinions as his own at trial.

### F. Lichtblau's Opinions Have Inadequate Factual Bases

As discussed above, *supra* pp4-5, and in Defendant's Motion, Lichtblau failed to review records or even inquire into Plaintiff's pre-incident condition. He failed to consider her pre- and post-incident knee issues. In attempting to color the opinions that resulted from this motivated reasoning as admissible expert testimony, Plaintiff cites a case where a medical causation opinion was admitted despite a failure to review medical records because the automobile accident at issue and the plaintiff's injuries involved few moving parts. *Matlin v. Langkow*, 65 Fed. Appx. 373, 383 (3d Cir. 2003). The expert in *Matlin* opined that the accident caused a back injury and admitting this opinion was not "arbitrary […] or clearly unreasonable." *Id*. at 382.

Here, unlike *Matlin*, we are concerned with possible future medical care for issues that have not even begun to develop and which are based on worst case scenarios. It is obviously speculative to predict such future maladies, as the testimony concerning surgery above lays bare. But making such predictions on the basis of a condition which may or may not even be caused by the subject injury, and where one has not even attempted to rule out other potential causes, results in wildly unreliable expert opinions.

### G.  If Lichtblau's Opinions Are Backed By Peer-Review, It's An Accident

As Defendant's Motion made clear, Lichtblau failed to include any scientific literature in his expert report that supports "his" opinions.  [DE 74 pp10-13].  This is true despite the report containing 80+ scientific authorities.  [DE 83-1 pp149-150, 153-154, 157, 160].  Defendant's Motion quoted Lichtblau promising to do an *ad hoc* search for such support.  [DE 74 p12].  Exhibits 4 and 5 to Plaintiff's Response are the results of that effort.  [DE 98 p12]; [DE 98-5].  Given Lichtblau's "methods," described above, any vague resemblance among this literature and Lichtblau's opinions is accidental or due to Lamm's work authoring the opinions.

### H.  Lichtblau's Testimony Is Many Things, But It Is Not Helpful

It is patently clear that Lichtblau's speculative, convoluted testimony about Plaintiff's purported need for future medical care will not assist the jury.  Even if the opinions at issue were his and not Lamm's, Lichtblau should not be permitted to confuse the jury by testifying, in effect, that Plaintiff may, sometime, but no one knows when, need "one or a combination of four [or] five different surgeries," which "is going to be a polite combination of one or two […] or three of those," and "at least two" but, of course, Lichtblau "doesn't know [and] can't tell you which ones."  [DE 74 p7-8].  Lichtblau's testimony ought to be precluded in its entirety.

## 2.  Plaintiff Fails to Show Fore's Testimony Is Admissible At Trial

Defendant's Motion raises the following problems with Fore's proposed testimony:  (1) he relies on inapplicable standards which he misrepresents by omitting the portions that show they apply to steel stairway treads which are required in crew areas of vessels, (2) he recommends alternate materials for the subject treads, which conflicts with his preferred standard's mandatory requirement that treads be made of steel, (3) his use of another cruise line's internal standards is not relevant here, is prejudicial, confusing, and misleading, (4) his remarks about the relevance of prior incidents are inadmissible as there is no evidence they involved substantially similar conditions or alleged causes, (5) his findings concerning the slip-resistance of the deck 13 flooring are not relevant as Plaintiff's accident was caused by a slip on the stairway, not the deck 13 flooring, (6) evidence concerning the slip-resistant properties of the flooring will prejudice Defendant, confuse and mislead the jury, and is not probative of any material disputes of fact, (7) Fore recycled unreliable estimates from a prior matter rather than testing the subject tread nosing, (8) he impugns Defendant for not testing the subject stairway but also claims it is not possible to do such tests, (9) his opinion about the design of the tread nosing

inadequately shedding water is unreliable as Fore had an opportunity to test this theory and did not and because he used only his imagination as support for this opinion, and (10) his opinion about the stairway's treads depths is inadmissible as it is premised on the fake slip-resistance values Fore employs to misrepresent the safety of the subject stairway. Plaintiff's Response fails to show that Fore's testimony is admissible at trial and, as a result, it should be precluded.

### A. Some of Fore's Methods Are Acceptable, But They Generated Irrelevant Findings

Defendant acknowledges that Fore used a facially reliable method when testing the slip-resistance of the subject teakwood stairway treads with his English XL tribometer. Of course, the teakwood treads are adequately slip-resistant, even if one assumes Fore's questionable[2] standard applies to the subject stairway. It is also possible that Fore's method for testing the deck 13 flooring is also reliable, but the slip-resistance of that surface is not relevant as it was not a cause of the subject accident. As such, Fore's methods may have resulted in reliable findings as to the properties of these surfaces, but these findings are inadmissible at trial because either they do not reveal violations of Fore's questionable standard or they concern immaterial facts that will prejudice Defendant and confuse and mislead the fact finder.

### B. Fore's Past Successes Are Not Relevant

Plaintiff's points to Fore's past successes resisting *Daubert* motions, but fails to mention Fore's history of submitting materially false affidavits. *See* [DE 88 pp6-7]. Fore successfully resisted sanctions for his past false affidavits because he did not directly violate a court order and there was inadequate evidence Fore's errors were willfull. *Id*. (citing *Fore v. State*, 201 So. 3d 839, 840 (Fla. 4th DCA 2016)).

Moreover, Fore's "estimate" of the coefficient of friction of the subject aluminum tread nosing that he recycled word-for-word from his expert report in the *Galarza* matter was admissible there for reasons that do not apply here. *Galarza v. Carnival Corp.*, 2016 WL 7507883, at *3 (S.D. Fla. 2016). There, the estimate was based on numbers for "the types of materials comprising the treads and nosings in question." *Id*. Here, the nosings are grooved aluminum and Fore's estimate uses numbers for wet leather on smooth steel. *See* [DE 58-1] ("Coefficient for Static Friction of Steel"). There, the subject tread nosings had been altered after the accident and before Fore's inspection. *Galarza,* 2016 WL 7507883 at *3. No such

---

[2] *See* [DE 74 pp14-16].

alterations occurred here. Moreover, the *Daubert* challenge in *Galarza* raised fewer issues and less details than have been raised here, making the past admission of this "estimate" irrelevant.

### C. Fore's Use of the ASTM F1166-07 Is Obviously Problematic

Fore's expert report contains two excerpts from ASTM F1166-07. [DE 51-1 p12]. As Defendant's Motion points out, §11.2.4 of this standard is misrepresented by omission in Fore's report, which excludes the entire first sentence of the section. *Compare* [DE 51-1 p12]; [DE 101-1 p99]. Notably, the omitted sentence describes a mandatory requirement. To wit, "[t]he surface of treads on exterior stairs shall be constructed of open steel grating or shall be covered with flat plate treated with nonskid material." [DE 101-1 §11.2.4 p99]. Fore did not use ellipses or otherwise flag this omission. [DE 51-1 p12]. Moreover, as the subject stairway has teakwood treads and aluminum nosings, if this standard is actually applicable, it is unclear why Fore did not impugn Defendant for an obvious violation of this mandatory requirement. That violation is much more straightforward than the fictional violation Fore ginned up by using COF values for wet leather on smooth steel and pretending they are representative of the actual COF values of the subject aluminum nosing. As is clear, Fore's standard does not apply to the subject stairway.

As Defendant's Motion also points out [DE 74 p15], Fore opines that the subject stairway treads be replaced or resurfaced with alternative materials, such as rubber. [DE 51-1 p17]. However, as seen above, his preferred standard mandates steel treads. As Defendant's Motion notes, expert witnesses whose opinions conflict with their cited authorities or standards, like Fore's do here, are routinely prevented from offering such opinions at trial. [DE 74 p17].

As is clear, the reason why the subject stairway (and many others on the *Star*) is made of teakwood and aluminum and the reason why, in that condition, the *Star* has been repeatedly found compliant with the applicable safety standards by the USCG or its agents (Ex B, *Norwegian Star*'s PSIX Data) is because the section of ASTM F1166-07 Fore relies on, §11.2.4, does not apply to the subject stairway. In her Response, Plaintiff points to *Sorrels v. NCL (Bahamas) Ltd.*, for the proposition that ASTM F1166-07 applies to the subject stairway. 796 F.3d 1275, 1282–83 (11th Cir. 2015). *Sorrels*, however, concerned §11.12.1.2 of this standard, not §11.2.4, so its inapplicability was not as salient to the 11th Circuit as it is here. *Id*. Moreover, in reversing the lower Court's finding, the Eleventh Circuit identifies the "Scope" section of ASTM F1166-07 as merely "another section." *Id*. The "Scope" section, however, is unambiguous – this standard applies to areas of the vessel used <u>by crew</u> to <u>operate, maintain, or</u>

live.  *See* [DE 101-1 §1.2 p1].  Accordingly, the Eleventh Circuit found that §11.12.1.2 applied to the deck around a pool as crew had to use that deck for operation and/or maintainence.  *Sorrels*, 796 F.3d at 1283.  The *Sorrels* court did not find that §11.2.4 applies to passenger area stairways made of materials that violate the section's mandatory requirements, as Plaintiff's Response suggests.  Even if §11.2.4 applies here, which it does not, the "Scope" of ASTM F1166-07 shows it is intended to assist crewmember safety aboard vessels.  Last, test of the nosings show they have a COF of 0.6 when wet, as §11.2.4 requires.  [DE 42-1 p4].

### D. Fore's Fictional Facts Should Never Be In the Same Room As a Jury

Plaintiff's main argument that Fore's "estimate" of the tread nosing's slip-resistance is its prior admission in the *Galarza* matter.  *Galarza* was distinguished above.  *See supra*, pp8-9.

In Fore's report, the reason provided for not testing the nosings is they "did not present a sufficient test area."  [DE 51-1 p16].  Oddly, in Plaintiff's Response, the excuse has transmogrified into issues with his device's "footpad […] getting hung up on the serrations of the nosings."  [DE 98 p14].  Defendant's engineering expert observed Fore's inspection of the stairway and testified that <u>Fore did not even try to test the nosings</u>.  The same expert tested the nosings using an adapter for the English XL tribometer made for testing stairs.  [DE 42-1 p4]; [Manual, Ex C pp21-23].  The nosings, when wet, have a COF of 0.6.  [DE 42-1 p4]

Fore's misrepresentations designed to admit his fake COF value for the nosings are worth detailing.  First, he cites two authorities for this value, but only one of them contains the value in his report.[3]  *See* [DE 58-1].  Second, the sole source for the value Fore uses shows the value is for the COF of wet leather on smooth steel, not relevant materials such as neolite and/or grooved aluminum.  Third, Plaintiff's Response claims the nosings are so rough that the foot of Fore's tribometer could not travel across them.  This sounds much more slip-resistant than smooth steel.  Fourth, there is no indication <u>who</u> provided the value that Fore adopts, <u>when</u> they provided it, <u>how</u> they arrived at it, <u>whether</u> it was verified, etc. etc.. *Id*.  It's an anonymous, undated source.  *Id*.  Despite this, Fore's dates the source 2016 in his report.  [DE 51-1 p16].  This date, like Fore's COF for the nosings, is a fiction.  As noted in Defendant's Motion [DE 74 p19], the feet on tribometers used to be made of leather before the mid-1970s, suggesting these numbers are actually much older than Fore's fictitious 2016 publication date.

---

[3] Defendant assumes "The Engineer's Toolbox" [DE 51-1 p16] refers to the site of the same name (http://toolbox.igus.com/).  A search of that site returns no relevant results.

### E.  Fore's Other Opinions Rely, In Part, On His Fake COF Value

The remainder of Fore's opinions, especially those concerning the nosings' ability to shed water and the manner in which the stairway's tread depth increases contact with the tread nosings, assume that the tread nosings are problematically slippery when wet. [DE 74 pp18-20]. As described above and in Defendant's Motion, the nosings are safe, even when wet.

### F.  No Opinions Were Unchallenged

Plaintiff's Response claims that Defendant does not challenge opinions Nos (4) and (5) which concern alternative materials for the subject stair treads. [DE 98 p20]. These opinions are directly challenged as they conflict with the mandatory requirements omitted from Fore's preferred, but inapplicable, standard. *See* [DE 74 p15]; *supra* p9.

Dated:  October 23, 2018
Miami, Florida

Respectfully submitted,

**FOREMAN FRIEDMAN, P.A.**

BY: */s/  Clyde Dunton-Gallagher*
Darren W. Friedman, Esq. (FBN 0146765)
dfriedman@fflegal.com
Rachael M. Fagenson, Esq. (FBN 91868)
rmitchell@fflegal.com
Clyde Dunton-Gallagher, Esq. (FBN 122012)
cgallagher@fflegal.com
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL  33131
Tel: 305-358-6555/Fax: 305-374-9077
*Counsel for Defendant*

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 23rd day of October, 2018. We also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

Case No. 17-cv-23888-SCOLA/Torres

By: */s/ **Clyde Dunton-Gallagher***
Clyde S. Dunton-Gallagher, Esq.

## SERVICE LIST
Case No. 17-cv-23888-SCOLA/Torres

| | |
|---|---|
| Michael D. Eriksen, Esq. | Jeffrey E. Foreman, Esq. |
| mde@travelaw.com | jforeman@fflegal.com |
| linda@travelaw.com | mfonticiella@fflegal.com |
| ksimper@travelaw.com | Darren W. Friedman, Esq. |
| Ericksen Law Firm | dfriedman@fflegal.com |
| 2161 Palm Beach Lakes Blvd., #410 | sargy@fflegal.com |
| W. Palm Beach, FL 33409 | marista@fflegal.com |
| Tel.: 561-684-7612/Fax: 561-533-8715 | Rachael M. Fagenson, Esq. |
| Counsel for Plaintiff | rmitchell@fflegal.com |
| | Clyde Dunton-Gallagher, Esq. |
| | cgallagher@fflegal.com |
| | FOREMAN FRIEDMAN, PA |
| | One Biscayne Tower – Suite #2300 |
| | 2 South Biscayne Boulevard |
| | Miami, Florida 33131 |
| | Tel: 305-358-6555/ Fax: 305-374-9077 |
| | Counsel for Defendant |