UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-23888-CV-SCOLA/TORRES

DAWN SCACCETTI,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO STRIKE EXPERTS

The current matter before this Court is a Motion to Strike Experts filed by Defendant NCL (BAHAMAS) LTD. ("NCL" or "Defendant") on September 28, 2018. [D.E. 74]. In that Motion, Defendant seeks to preclude the introduction of any evidence or testimony from Dr. Craig Lichtblau and Frank A. Fore, two experts retained by Plaintiff DAWN SCACCETTI ("Scaccetti" or "Plaintiff") in this matter. [*See* D.E. 22]. Plaintiff responded in opposition to the Motion on October 16, 2018, [D.E. 98], and Defendant's Reply followed on October 23. [D.E. 105].[1] After reviewing the Motion and the opposition to same, in addition to the relevant legal authorities governing the dispute and the record before us, we hold that Defendant's Motion is **DENIED** as to Dr. Lichtblau and **GRANTED in part and DENIED in part** as to Mr. Fore**.**

---

[1]     The Honorable Judge Robert N. Scola referred the Motion to the undersigned on October 1, 2018. [D.E. 76].

## I. *FACTUAL BACKGROUND*

This is a maritime personal injury action. Plaintiff alleges that she slipped and fell on Defendant's vessel, the *Norwegian Star*, while descending a staircase. According to Plaintiff's Complaint, Scaccetti required surgery to repair a fractured ankle after the incident. Plaintiff now seeks to hold Defendant liable for the fall on the vessel, setting forth three causes of action against the cruise line, all of which sound in negligence: (1) negligent "specification and control" of the design and construction of the walking surface; (2) failure to maintain the vessel in a reasonably safe condition; and (3) failure to warn. As a result of the incident, she claims that her injuries will continue into the future and that she will require treatment for the rest of her life.

Plaintiff retained Dr. Craig H Lichtblau, a board-certified physiatrist that practices in the Miami area, as an expert. Plaintiff underwent several examinations with Dr. Lichtblau after the incident giving rise to the Complaint, and the doctor reviewed various medical records from other providers in order to offer opinions on Plaintiff's residual functional capacity and her need for future care. To that end, Dr. Lichtblau prepared a "Comprehensive Rehabilitation Evaluation," a report that spans 253 pages and contains his ultimate conclusions about Plaintiff's medical condition, her future medical needs, and her ability to work and engage in other activities. Dr. Lichtblau's report also contains information concerning the costs associated with the various treatments he believes Plaintiff will require for the rest of her life.

Plaintiff also retained Mr. Fore, a biomechanical engineer, to opine on the state of the deck's surface at the time the incident took place. Specifically, Plaintiff intends to offer Fore's expert testimony to establish that the pedestrian walkway is unsuitable for its intended purpose, and that Norwegian knew of these various engineering flaws prior to Scaccetti's incident. Mr. Fore visited the vessel in question and inspected the surface at the scene of the incident in connection with preparation of his expert report, taking several measurements in the area of the fall and recording the slip resistance of the surfaces at issue.

Defendant's Motion seeks to challenge Dr. Lichtblau's opinions in several ways, and argues: (1) Lichtblau misrepresents his relationship with Plaintiff to obtain special "deference" with regard to his opinions; (2) his opinions on future damages are unreliable and speculative; (3) his testimony will not assist the trier-of-fact; and (4) all of his opinions are unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. [D.E. 74]. Norwegian also challenges Mr. Fore's opinions, claiming that his report: (1) includes references to irrelevant standards that Fore purportedly used to reach his ultimate conclusions; (2) cites to irrelevant prior incidents involving the subject surface; (3) contains "immaterial disputes of fact"; and (4) relies on "fictional facts." *Id*. Plaintiff, naturally, opposes the relief requested by Defendant, arguing that each expert is qualified, reliable, and helpful.

We have reviewed the briefing materials provided by both parties, including the *curriculum vitae* attached to Dr. Lichtblau and Mr. Fore's reports, the testimony given in depositions by both, and the reports prepared for use at trial. Following our

3

review of these materials, we find that Defendant's arguments are not unfounded, but cannot support its request for wholesale preclusion of each expert's opinion. For the reasons explained below, the Motion should be denied as to Dr. Lichtblau, and granted in part and denied in part as to Mr. Fore.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Under that Rule, district courts must act as "gatekeepers" and admit expert testimony "only if it is reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). Under Rule 702, an expert may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Eleventh Circuit requires a district court to engage in a three-part inquiry in order to assess the admissibility of expert testimony, making certain:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The Eleventh

4

Circuit refers to these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *Clena Inv., Inv. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 660 (S.D. Fla. 2012) (citations omitted). Although there is "inevitably some overlap" among these basic requirements, "they remain distinct concepts and the courts must take care not to conflate them." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

The party seeking to offer the expert testimony carries the burden of laying the proper foundation, and admissibility of such opinions must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Court making a determination as to an expert's opinion must keep in mind that "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341. The decision to admit or exclude expert testimony is within the sound discretion of the trial court, *Frazier*, 387 F.3d at 1258, and a court enjoys "considerable leeway" when making such a determination. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).

### III. ANALYSIS

#### A. <u>Dr. Lichtblau</u>

Defendant first argues that we must preclude Dr. Lichtblau from testifying at trial because he improperly referred to himself as Plaintiff's "treating physician" during his deposition. [D.E. 74, p. 5]. Norwegian claims that a treating physician's opinion is entitled to special deference, and that Lichtblau misrepresented his

5

relationship with Plaintiff in order to receive the benefit of the doubt provided by such a relationship. *Id.*, pp. 5-6.

We will deny the Motion on these grounds for three reasons. First, on this record we cannot – as Norwegian asks us to – determine that Dr. Lichtblau misled Defendant's counsel when answering questions about his relationship with Plaintiff. While it is certainly possible that Dr. Lichtblau consulted with Scaccetti "solely for the purposes of this litigation," as Defendant argues, he was asked this question several times during his deposition and denied this to be the case:

> Q: Was [Plaintiff] referred to you by Mr. Eriksen?
>
> **A: No, I don't think so.**
>
> Q: Do you know one way or the other?
>
> **A: Yeah, I think she came to because she's on my – I'm on her insurance plan. I'm AETNA.**
>
> …
>
> Q: Do you know one way or the other for certain?
>
> **A: It's greater than 50 percent probability. That's what I think. I don't think Mr. Eriksen sent this patient to me.**

[Depo of Dr. Lichtblau, D.E. 74-5, pp. 17-18]. When pressed, Dr. Lichtblau continued to claim that Plaintiff contacted his office for reasons related to insurance. *See id.*, p. 18 ("I think she came because of AETNA."). Based on this testimony, we cannot find that Dr. Lichtblau's relationship with Plaintiff began solely as a result of his retention as an expert in this case, and we cannot make a determination that Lichtblau actually

misrepresented this relationship during his deposition; the record contains evidence to the contrary, and it would be inappropriate to reach those conclusions here.

Second, Defendant failed to cite to a single case that would support its claim that an expert's opinion should be precluded in its entirety simply because his role allegedly "blurs the line" between that of a treating physician and that of a retained expert. This is not surprising; a treating physician may offer lay opinion testimony when that opinion "is based on his experience as a physician and [is] clearly helpful to an understanding of his decision making process in the situation," *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1217 (11th Cir. 2011), but may also offer expert opinions "beyond those arising from treatment" if the party offering such testimony complies with Rule 26(a)(2)(B)'s reporting requirements. *See Whelan v. Royal Caribbean Cruises, Ltd.*, 976 F. Supp. 2d 1322, 1328 (S.D. Fla. 2013) (citing *In re Denture Cream Prods. Liab. Litig.*, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012)). Defendant does not claim Plaintiff failed to comply with the expert witness requirements mandated by Rule 26, so its attempt to preclude the opinions on this basis appears misguided.

Third, if Defendant truly does believe that Dr. Lichtblau misrepresented his relationship with Plaintiff – and, as it argues, only treated Scaccetti after being retained as an expert in this matter – such challenges are more appropriate for cross examination at trial. *See Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) ("A district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'") (quoting *Allison*, 184 F.3d at 1311); *see also Daubert*,

7

509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means for attacking shaky but admissible evidence.").

Defendant next argues that Dr. Lichtblau cannot testify at trial because his opinions about Plaintiff's future damages are inadmissible and "wholly speculative." [D.E. 74, p. 6]. Norwegian breaks this argument down into three subparts: (1) Lichtblau's opinions are not his own, but instead belong to Dr. Lamm, Plaintiff's surgeon; (2) the opinions lack an adequate factual basis; and (3) the opinions are unreliable because the doctor cannot point to peer-reviewed literature supporting his positions and "cannot articulate how [his opinions] flow from his experience." *Id.*, p. 10. We find that each argument is insufficient to support precluding Dr. Lichtblau's testimony from being heard by the jury.

As to the first point, Defendant is correct that an expert may not testify regarding opinions that are not his own. *See Jones v. Royal Caribbean Cruises, Ltd.*, 2013 WL 8695361, at *6 (S.D. Fla. Apr. 4, 2013) (citing *In re Denture Cream*, 2012 WL 51999597, at *4)). But we do not agree that this is what occurred here. Our review of Dr. Lichtblau's report and deposition transcript reveals that Norwegian's argument is based on a selective reading of his testimony. Dr. Lichtblau testified that he would *not* defer to Dr. Lamm or any other doctor when he makes a determination as to whether a patient requires additional future surgery, which often occurs in connection with his practice. [D.E. 74-4, p. 65]. He also testified that it is solely his opinion that Plaintiff will need a combination of several surgeries in the future based

8

on the information contained in Scaccetti's medical records, *id.* at 67-69, but that he also regularly consults with other medical professionals when preparing life care reports. *Id.* at 96, 131-132. This testimony refutes Norwegian's contention that Dr. Lichtblau's expert work was not his own.

Defendant next challenges Lichtblau's report as lacking an adequate factual basis. In particular, Defendant contends that Dr. Lichtblau failed to attribute Plaintiff's need for continuing future care on possible pre-existing orthopedic injuries, which should render his opinion inadmissible. [D.E. 74, 8-9]. Once again, we disagree. Dr. Lichtblau is a life-care planner; he is not being offered as a medical expert to establish that the incident giving rise to the Complaint caused Plaintiff's need for future medical treatment.[2] Instead, his opinions provide a baseline estimate on the cost of Plaintiff's future medical care, given her current medical condition – a fact Lichtblau stressed at several points during his deposition. [*See* D.E. 74-4, p. 55 ("This plan is looking at this lady in totality in the real world of medicine. She has a very bad ankle fracture. She's required multiple orthopedic interventions. She still has pain in her ankle. She still favors it. She has an antalgic gait. She's got 27 more years to live.")]. Such a challenge does not provide grounds to strike Dr. Lichtblau's report in its entirety. *See Deramus v. Sala Motor Freight Line, LLC*, 2009 WL 1664084, at *2 (M.D. Ala. June 15, 2009) (finding expert testimony of life care planner admissible where expert had reviewed the plaintiff's medical records and depositions of the

---

[2] To the extent that Plaintiff intends to elicit testimony from Dr. Lichtblau on causation, we find that any such testimony should be excluded.

9

plaintiff's treating physicians); *cf. Rinker v. Carnival Corp.*, 2012 WL 37381, at *2 (S.D. Fla. Jan. 6, 2012) (excluding life care planning expert's report as speculative for, among other reasons, reaching his conclusions without speaking to plaintiff's treating physicians or the plaintiff herself).

We are also not persuaded that the challenges raised concerning the alleged lack of a factual basis supporting Lichtblau's opinions are appropriate at this stage. In our view, Norwegian's contentions are once again more appropriate for cross examination at trial. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("[M]ere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility.") (internal quotation omitted); *Ostroski v. United States*, 2007 WL 9701868, at *2 (S.D. Fla. Aug. 23, 2007) ("Any claimed weakness in the factual basis for [an expert's] conclusion…goes at best to weight and credibility, and can certainly be explored on cross examination.").

Defendant's third contention claims about Dr. Lichtblau's opinions on future medical care involve its argument that such opinions are unreliable. In particular, Norwegian argues that Dr. Lichtblau's alleged methods are "not sanctioned by peer-reviewed literature" and that he failed to articulate how his opinions "flow from his experience." [D.E. 74, p. 10]. Once again, we find this argument unavailing.

> In determining the reliability of an expert opinion, we must consider:
>
> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Quiet Tech.*, 326 F.3d at 1341. But this list of factors is not exhaustive, and we may look to other considerations that bear on the ultimate reliability of a proffered expert's opinion. *Id.* (citing *Kumho Tire*, 526 U.S. at 150). "Whether the *Daubert* opinion factors are even pertinent to assessing reliability in a given case will [depend] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *United States v. Brown*, 415 F.3d 1257, 1267-68 (11th Cir. 2005) ("The decision in *Kumho Tire* elaborated on the flexible nature of the inquiry.").

Despite Defendant's assertion to the contrary, Dr. Lichtblau cited extensively to medical authorities he claims support his opinions. Indeed, the report contains an extensive list of medical journals, articles, and other studies consulted during the preparation of the plan of care outlined in his report, and our review of his testimony flatly refutes Defendant's claim that the doctor was unable to identify the scientific authorities he relied upon when asked about same. [*See* Depo. of Dr. C. Lichtblau, D.E. 74-1, p. 98].[3] It is telling that Defendant fails to actually challenge any of the periodicals discussed or cited to by Dr. Lichtblau (and troubling that it chose to effectively ignore the extensive recitation of materials the doctor included in his

---

[3] Q: Was there a standard procedure or process that you followed in creating a continuation of care plan for her?

**A: Yes, there is peer-reviewed literature on how to do that. It was published in the American Academy of Physical Medicine and Rehabilitation in February 2014. Then again in 2015. The actual author of that article, Andrea Zotovas, worked in this office doing EMG nerve conduction studies for ten years. I didn't write the article, but I think I influenced how the article was written.**

11

report). Instead, Defendant advanced broad, conclusory statements about Lichtblau's testimony to mount its challenge on this front. Nevertheless, as the record contradicts Defendant's statements that Dr. Lichtblau failed to identify *any* scientific studies that would support his opinions, we will not strike them now. *See Allison*, 184 F.3d at 1312 ("'[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable.") (citation omitted).

As an additional consideration, the evaluation of a proffered expert's methodology varies from case to case. *Frazier*, 387 F.3d at 1262. In cases involving non-scientific issues, the relevant reliability concerns may focus on personal knowledge and experience. *See Kumho*, 526 U.S. at 150 (stating that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."). And courts in this District have found that "proffered expert physicians need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline." *Galarza v. Carnival Corp.*, 2016 WL 7507883, at *7 (S.D. Fla. Aug. 8, 2016) (citation omitted) (allowing Dr. Lichtblau to offer expert opinions on knee pain, the need for a knee replacement and depression despite not specializing in orthopedics, psychology, or psychiatry). Defendant has failed to establish how Dr. Lichtblau's extensive experience in his field, discussed at length in his deposition and supported by our review of his *curriculum vitae,* coupled with the citations to the scientific literature he claims support his conclusions, could still somehow render his

opinions wholly unreliable. Since we are unconvinced that this is the case, we will deny the Motion to Preclude on these grounds.

Finally, we will deny Defendant's claim that Dr. Lichtblau's testimony would be confusing to the jury, or that it is unhelpful, unduly prejudicial, and not probative. Defendant offers no support for these statements, and instead simply takes issue with certain answers provided by Dr. Lichtblau during his deposition. Without providing this Court with any legal authority as to how the claimed "condescending deflections" might support preclusion under *Daubert* and Rule 403 of the Federal Rules of Evidence, we must deny the Motion. *See in re American Airlines Flight 331*, 2014 WL 12809821, at *4 (S.D. Fla. Feb. 11, 2014) (burden is on defendant to show the danger of unfair prejudice substantially outweighs the probative value of the evidence under Rule 403).

In sum, we find that Dr. Lichtblau is qualified to offer the opinions contained in his report, and that his positions are factually supported and sufficiently reliable under *Daubert* and Rule 702. Further, each argument raised by Defendant to challenge the opinions at issue are insufficient to bar the doctor's testimony at this point in time. For this reason, we will deny the Motion.

### B.   *Mr. Fore*

As for Mr. Fore, we find the Motion should be granted in part and denied in part. We will not strike his opinions wholesale; upon our review of his report, his qualifications, and the methodology he used when measuring the coefficient of friction on the subject surfaces, we are convinced that his testimony will assist the trier of

fact. Relying on his expertise, the jury may better understand the evidence from Plaintiff's perspective and determine certain facts in issue. *See Frazier*, 387 F.3d at 1260.

Almost every single challenge raised by Defendant goes to the weight given the testimony by a trier of fact, and not the ultimate determination as that the testimony is excludable based on a *Daubert* challenge. As an example, Norwegian argues that Fore relies on an inapplicable standard – ASTM F1166-07 – in order to make his determination that the coefficient of friction present on the surface where the fall occurred fell below the recommended level. [D.E. 74, p. 14]. Concerning the ASTM standard, Defendant contends that Fore's use of that standard is irrelevant because it does not apply to areas accessible to passengers and discusses a coefficient of friction that pertains to open steel grating treated with non-skid material. *Id.*, p. 15.

However, Fore's testimony about the ASTM sections would be helpful in explaining to the jury the various standards used by professionals in this particular field and what those standards say about minimum levels of coefficient of friction and slip resistance on various surfaces. Norwegian is free to explore at trial whether those standards should be used in the maritime passenger context, and – if so – whether the standards discussed by Fore would have any applicability in the area of the vessel where Plaintiff's incident allegedly occurred. *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1282 (11th Cir. 2015) (finding district court abused its discretion in excluding witness from testifying about certain ASTM standards by relying on other standards containing discrepancies with those used by challenged expert);

*Holderbaum v. Carnival Corp.*, 2015 WL 5006071, at *6 (S.D. Fla. Aug. 23, 2015) ("[Defendant's] contention that certain ambiguities in the regulations render Fore's testimony as pure speculation is misplaced, as the ambiguities in these regulations actually *reinforce* the need for an expert to assist the jury in sorting through these sources to try to establish the standard of care in this negligence action."); *see also Cook v. Royal Caribbean Cruises, Ltd.*, 2012 WL 1792628., at *3 (S.D. Fla. May 15, 2012). Defendant's challenge is an attack on the weight that should be given to Fore's opinion by the jury, not whether that opinion should be struck as a whole; and so the Motion should be denied on this count. *Holderbaum*, 2015 WL 5006071, at *6 ("Carnival's contentions may surely be addressed during cross examination, but they are not a reason to strike the expert's findings or preclude his testimony at trial.").

The same can be said for Norwegian's claim that Fore's findings as to the slip resistance on Deck 13 are immaterial. [D.E. 74, p. 17]. Defendant argues that Plaintiff slipped on the staircase *leading to* Deck 13, and so the measurements of the slip resistance of the staircase surface should be the only relevant inquiry. But this is not an undisputed fact, despite Defendant's attempts to have it be so. Plaintiff testified that she slipped on the staircase, but also lost her footing at the bottom of the staircase – Deck 13 – when she reached the landing. [Depo. of D. Scaccetti, D.E. 82-1, p. 108 ("I slipped on the steps, and then my foot went on that floor. The left foot went down and slid across, as I slipped on the steps, and I slid on the floor."). Fore relied on this testimony when preparing his report. [Depo. of F. Fore, D.E. 74-6, pp. 20-21 ("[W]hen her feet hit the deck, that was the last clear opportunity for her to

15

stop her slide. And I think anybody who's (sic) slid down stairs knows that when they get to the landing, that is typically where they're able to stop the slide."). Defendant's contention about the measurements on Deck 13 is nothing more than a factual dispute over what occurred, and we will not strike the opinion on this basis.

We do, however, find that Fore's testimony should be limited with regard to the slip resistance of the tread nosings located on the stairs where the fall allegedly took place. In his report, Fore states that the slip resistance for these nosings measured at "less than 0.40." [D.E. 51-1, p. 4]. But during his deposition, he admitted that he did not measure the coefficient of friction on the staircase's nosings because "it was impossible" to do so. [Depo. of F. Fore, D.E. 74-6, p. 43]. Fore claimed he based this opinion not on actual testing, but "upon a chart that shows an average [measurement for slip resistance] when leather strikes [wet] steel." *Id.* at pp. 44-45. Any such testimony would be far too speculative to allow it to reach a trier of fact; although Mr. Fore argues that there are several reasons for why he could not obtain an accurate measurement on the subject nosings, his opinion as to the coefficient of friction for the nosings is not based on any scientific testing performed at the site of the incident. Thus, Mr. Fore must be precluded from offering any testimony about the coefficient of friction or slip resistance measurements of the stairway's nosings, although our decision should not be read to prevent him from explaining why he believes he was unable to obtain such measurements on the date in question.

## IV.  CONCLUSION

Accordingly, the Motion is **DENIED** as to Dr. Lichtblau, and **GRANTED in part and DENIED in part** as to Mr. Fore. Plaintiff is precluded from eliciting testimony from Mr. Fore as to the slip resistance of the tread nosings on the stairs where the fall allegedly took place, but all other testimony is admissible.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 21st day of November, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge